IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RICHARD HENDRICKSON,

     Plaintiff,

v.                            CASE NO. 1:14-cv-179-MW-GRJ

WILLIAM CERVONE, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court for screening pursuant to 28 U.S.C. § 1915 governing proceedings *in forma pauperis* is Plaintiff's Second Amended Complaint. (Doc. 15.) Plaintiff's claim stems from his allegations that the Defendants conspired to maliciously prosecute him.  Upon careful consideration of Plaintiff's Complaint, it is recommended that this case be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff claims that on February 16, 2012, he received a call from Wesley Gonzales that Duran Carmen, the 24 year old stepson of Defendant Mathew Rocks, told Gonzales that Carmen had persuaded his younger stepbrother, MRJ, age 11, to say that he had been sexually "touched" by Plaintiff.  (Doc. 15 at 2.)  He claims that Gonzales told him that Carmen said that he and Defendants Melisa and Mathew Rocks would not report this to the police if Plaintiff would agree to aid them financially. *Id.*

Plaintiff states that Carmen saw him on the phone and attempted to wrest the phone from his grasp.  (Doc. 15 at 3.)  He alleges that both Plaintiff and Carmen called

the police, and Defendants Deputy Sheriff Wendy Snodgrass and Lieutenant Cardasco responded. *Id.* Plaintiff claims that the police took statements from Plaintiff and Carmen about the incident. *Id.* Plaintiff avers that Defendants Snodgrass and Cardasco mentioned a Department of Children and Families ("DCF") report made twelve years ago against Plaintiff for abuse against a child. *Id.*

Plaintiff alleges that Carmen stated that Plaintiff had sexually abused him since he was eight years old in an affidavit created on February 17. (Doc. 15 at 3.) He claims that Carmen, along with Defendants Mathew and Melisa Rocks, fabricated the statement to extort money from Plaintiff. *Id.*

Plaintiff alleges that later that day, Rena Brock, an investigator for the DCF, appeared at Plaintiff's home and told Defendant Melisa Rocks to move out. (Doc. 15 at 4.) He states that after the Rocks moved out, they maintained contact with Plaintiff and told him that if they did not comply with the police, their children would be placed in foster care. (Doc. 15 at 5.) The Rocks told Plaintiff that the extortion plan was fabricated solely by Duran Carmen. *Id.*

Plaintiff avers that on February 18, 2012, Defendant Flynn, a child protection investigator for the DCF, conducted a video interview of the Rocks's children: MRJ, age 11, and JR, age 10. (Doc. 15 at 8.) Plaintiff claims that the children did not say that Plaintiff sexually abused them while they stayed at his house. *Id.* However, Plaintiff also notes that in this interview, JR stated that Plaintiff had forced him to watch two men having sex on his laptop. (Doc. 15 at 15-16.) Plaintiff claims that Defendant Flynn did not report the children's statements that Plaintiff had not abused them, and instead

opined that "some sort [of] lewd behavior had occurred." (Doc. 15 at 8.)  He alleges that Defendants Brock and Flynn attempted to coerce the children into additional interviews by threatening to place them in foster care. (Doc. 15 at 9.)

Plaintiff alleges that on June 25, 2012, Defendant Willis, the assistant state attorney, told Plaintiff's attorney that he was not pursuing charges against Plaintiff. (Doc. 15 at 12.)  Plaintiff claims Defendant Willis made this statement to prevent Plaintiff from seeking other counsel and to "entrap" him to move out of state. *Id.*  Plaintiff states that Defendant Snodgrass filed a criminal complaint against Plaintiff on July 19, 2012. (Doc. 15 at 9.)  Plaintiff claims that Defendants Willis, Snodgrass and Mathew and Melisa Rocks met to create a date when Plaintiff would have sexually abused the two children, which the Rocks used in their deposition. (Doc. 15 at 10.)

Plaintiff claims that in September, Defendant Willis emailed Plaintiff's attorney and said that "it would be better for everyone if [Plaintiff] did move."  (Doc. 15 at 12.) Plaintiff claims that because of this email, he made arrangements with his employer to transfer from Gainesville, Florida, to Anchorage, Alaska.  *Id.*  Plaintiff states that he left for Alaska on September 28, 2012. (Doc. 15 at 12-13.)  Plaintiff alleges that on October 9, 2012, he was informed that Defendant Willis would file the information and warrant and that he had to return to Florida. (Doc. 15 at 13.)  He returned to Florida on November 6, 2012.  *Id.*

In his Complaint, Plaintiff states that Defendants Mathew and Melisa Rocks called him on November 15, 2012, prior to his arrest, and promised to drop the charges if he paid for their dental bill and created a college trust fund for their children.  (Doc. 15 at

10-11.)  He claims that he paid the Rocks a sum of $700. (Doc. 15 at 11.)  Plaintiff

alleges that the same day Plaintiff spoke with the Rocks, Defendant Willis obtained a

warrant for his arrest.  *Id.*

Plaintiff alleges that Defendant Sweeley arrested Plaintiff while he was driving

home to Gilchrist County on November 20, 2012. (Doc. 15 at 17.)  Plaintiff claims that

Defendant Sweeley kept him in handcuffs for over three hours, despite a shoulder injury.

*Id.*  Plaintiff believes that Defendant Sweeley learned his location by wiretapping his

telephone conversations. *Id.*  He further claims that Defendant Sweeley told him that the

Volusia County Sheriff had ordered him to seize and impound Plaintiff's car, without a

warrant. *Id.*

Plaintiff claims that in a deposition taken in May 2013, both MRJ and JR denied

that Plaintiff had sexually abused them.[1]  (Doc. 15 at 14.)  He states that the charges of

capital sexual battery and lewd conduct against MRJ were dismissed on May 30, 2013.

*Id.*  He alleges that on the same day, Defendant Cervone swore to an amended

complaint with charges of showing of obscene material to MRJ and JR and one count of

lewd and lascivious conduct and/or lewd conduct against JR.  (Doc. 15 at 15.)  These

charges were dismissed on October 8, 2013.  (Doc. 15 at 18.)

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915 governing proceedings *in forma pauperis*,  the

---

[1] Although Plaintiff claims that MRJ and JR denied any sexual abuse, he also
makes an ambiguous claim that MRJ stated in his deposition that he had "viewed two
naked men and....had [] notified his mother." (Doc. 15 at 16.)

Court may dismiss a case at any time if the Court determines that the allegation of poverty is untrue, or the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C § 1915(e)(2).

   To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).  If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 681-85 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

### III. DISCUSSION

   The core of Plaintiff's Complaint is that the eleven Defendants conspired together to initiate a malicious prosecution against him.  The standard for conspiracy under § 1983 is that the plaintiff must show that a conspiracy existed that resulted in the

actual denial of some underlying constitutional right.  *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998).  The plaintiff must show that the parties 'reached an understanding' to deny the plaintiff his constitutional rights. *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty*., 956 F.2d 1112, 1122 (11th Cir. 1992).  In this regard, "the linchpin for conspiracy is agreement, which presupposes communication." *Id.*  The plaintiff must provide "some evidence of agreement between the defendants." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002).  Even under liberal federal pleading rules, a plaintiff must allege specific facts showing either the existence or the execution of the claimed conspiracy and must show overt acts related to the promotion of the conspiracy and some link between the alleged conspirators. *Granville v. Hunt*, 411 F.2d 9, 11 (5th Cir. 1969); *Croy v. Skinner*, 410 F. Supp. 117, 126 (N.D. Ga. Feb. 12, 1976).

In addition to evidence of an agreement, Plaintiff must also show an actual denial of an underlying constitutional right, which in this case is malicious prosecution in violation of the Fourth Amendment.  To establish a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must show (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures.  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).

Under Florida law, the common law tort of malicious prosecution has six elements: (1) an original judicial proceeding was commenced or continued against the present plaintiff; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide

termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla .Dist. Ct. App. 2002).

Malicious prosecution under § 1983 also requires a violation of the plaintiff's Fourth Amendment right to be free from unreasonable seizures.  An arrest without probable cause is an unreasonable seizure, but the existence of probable cause defeats a § 1983 malicious prosecution claim.  *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008).  Probable cause is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1257 (11th Cir. 2010)(quoting *Gerstein v. Pugh*, 420 U.S. 103 (1975)).

The Court will address the Plaintiff's allegations against each Defendant in the context of his claim for a conspiracy to initiate a malicious prosecution.

### (i) Defendant Cervone

Plaintiff claims that Defendant Cervone (who is and was the State Attorney for Florida's Eighth Judicial Circuit): (1) pursued a prosecution against him without evidence; (2) granted Duran Carmen immunity for thefts from his employer fifteen months previously; (3) refused to investigate the claim that Carmen coached MRJ to say that Plaintiff sexually abused him; and (4) knew that Defendant Willis's sworn statement was without probable cause. (Doc. 15 at 19.)

A prosecutor enjoys broad immunity for actions initiated under § 1983.  All acts

that a prosecutor performs in the course of his role as an advocate for the State are entitled to the protections of prosecutorial immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  This includes but is not limited to initiating a prosecution, presenting the State's case, and appearing before a court and subsequent conduct in the courtroom (including examining witnesses and presenting evidence in support of a search warrant). *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Burns v. Reed*, 500 U.S. 478, 490-92 (1991); *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).  Additionally, actions under § 1983 preserve the common law principle that a prosecutor was absolutely immune from suit for malicious prosecution. *Hart v. Hodges*, 587 F.3d 1288 (2009).

Defendant Cervone's alleged actions are all subject to the protection of prosecutorial immunity.  Plaintiff's claims that Defendant Cervone initiated a prosecution without evidence, did not investigate the possibility that Duran Carmen "coached" MRJ, and knew that Defendant Willis's statement lacked probable cause all fall within a prosecutor's role as advocate for the State.  Furthermore, Plaintiff's allegation that Defendant Cervone granted Duran Carmen immunity for thefts is entirely unrelated to the case at hand.  Defendant Cervone is protected from suit for malicious prosecution by prosecutorial immunity.

Even if prosecutorial immunity were not available for Defendant Cervone, Plaintiff does not provide any factual allegations to support a conspiracy between Defendant Cervone and the other Defendants to violate Plaintiff's rights.  *Rowe*, 279 F.3d at 1283-84.  Accordingly, the claims against Defendant Cervone are due to be dismissed.

### (ii) Defendant Willis

Plaintiff claims that Defendant Robert Willis, the Assistant State Attorney for the Eighth Judicial Circuit, (1) untruthfully swore he had complaints from MRJ and JR alleging a criminal act; (2) conspired with the other defendants; (3) falsely informed Plaintiff that he would not prosecute him; (4) told Plaintiff to move out of state in order to set a higher bond; (5) enjoined Plaintiff from continued employment by telling him to move and approving his transfer; (6) caused Plaintiff to deplete his financial resources; and (7) agreed to seize and search his property without a warrant. (Doc. 15 at 19-20.)

Plaintiff's allegations that Defendant Willis untruthfully swore to complaints from MRJ and JR, informed Plaintiff he would not prosecute him, told Plaintiff's attorney that Plaintiff should move, and caused Plaintiff to deplete his financial resources through paying bond, are actions protected by prosecutorial immunity as performed within his role as an advocate for the State.  Plaintiff cannot state a § 1983 claim against Defendant Willis on the basis of acts performed in his position as a prosecutor.

Plaintiff also alleges that Defendant Willis met with Defendant Snodgrass and the Rocks to create a date when Plaintiff would have sexually abused the children.  He claims that the Rocks testified to this date in their deposition.  However, prosecutors' interviews of a witness in preparation for future proceedings is conducted as part of the prosecutorial role and is protected by absolute immunity.  *Rogers v. O'Donnell*, 737 F.3d 1026 (6th Cir. 2013).  Prosecutors also have immunity for claims of conspiracy to commit perjury based on a witness's allegedly false testimony. *Jones v. Cannon*, 174 F.3d, 1288 (11th Cir. 1988).  Consequently, this allegation against Defendant Willis is

also protected by prosecutorial immunity.

Finally, to the extent that Plaintiff alleges a separate Fourth Amendment claim against Defendant Willis for agreeing to seize and search his property without a warrant, this claim would also fail.  Plaintiff's Complaint states that "upon information and belief the illegal seizure and subsequent search, had been initiated by Assistant State Attorney Robert Willis." (Doc. 15 at 17.)  Plaintiff provides no support for Defendant's involvement in any seizure and search of his property beyond unsubstantiated speculation. In contrast to his claim, Plaintiff contends that Lieutenant Taylor was responsible for ordering his car seized. *Id.*  Plaintiff has no cognizable claim against Defendant Willis under the Fourth Amendment and, therefore the claims against Defendant Willis are due to be dismissed.

### (iii) Defendant Snodgrass

Plaintiff claims that Defendant Snodgrass (1) did not preserve the February 17, 2012 video interview with MRJ and JR; (2) refused to interview Plaintiff, Duran Carmen, Wesley Gonzales, Lisa Owens, Amy Andrews, or Robin Kirkwood, and did not investigate Plaintiff's prior settlement; (3) entered Plaintiff's home while he was absent and told Sharon Shamblin to tell him that he should move, and (4) conspired with Defendants to fabricate evidence. (Doc. 15 at 21.)

Plaintiff's claim against Defendant Snodgrass for conspiracy to maliciously prosecute him is deficient because Plaintiff fails to demonstrate either conspiracy or the underlying constitutional violation of the Fourth Amendment.  First, Plaintiff fails to allege fact demonstrating that Defendant Snodgrass conspired with the other Defendants.  As

previously discussed, a plaintiff must allege specific facts showing existence or execution of the claimed conspiracy, along with overt acts related to the conspiracy and a link between the alleged conspirators. *Granville*, 411 F.2d at 11.  Mere speculation does not meet this standard.  *Puglise v. Cobb County, Ga.*, 4 F. Supp.2d 1171, 1181 (N.D. Ga. April 8, 1998).  Plaintiff's bare allegation that Defendants Snodgrass and Willis fabricated a date on which the crime occurred is pure speculation and does not allege any plausible facts to support the claim against Defendant Snodgrass for conspiracy to violate Plaintiff's rights.

Additionally, Plaintiff has not shown an underlying violation of the Fourth Amendment.  The major problem with Plaintiff's claim is that he has not shown that his arrest lacked probable cause, which he has the burden to prove.  *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).  Plaintiff's arrest was pursuant to a warrant issued by a magistrate. (Doc. 15 at 11.)  A magistrate's determination of probable cause should be paid great deference by reviewing courts.  *Illinois v. Gates*, 462 U.S. 213 (1983).  Even setting aside the magistrate's determination of probable cause, Plaintiff has provided no allegations beyond conclusory assertions to show a lack of probable cause for his arrest - in fact, the allegations in his Complaint belie his claim that probable cause did not exist.[2]  Accordingly, the existence of probable cause defeats his underlying claim for a

---

[2] Although Plaintiff maintains that the Defendants initiated a prosecution without probable cause, the assertions in his Complaint are contradictory. For example, Plaintiff claims that in the DCF video interview of the two children, neither made any accusations of sexual abuse by Plaintiff.  However, Plaintiff later states that JR said in his interview that Plaintiff had forced him to watch two men having sex on his laptop, Doc. 15 at 15-16, and in MRJ's deposition, Plaintiff alleges that he said that he had "viewed two naked men and...had [] notified his mother," Doc. 15 at 16.

Fourth Amendment violation.  Plaintiff fails to state a claim against Defendant Snodgrass for conspiracy to maliciously prosecute him and, therefore, the claims against her should be dismissed.

### (iv) Defendants Slaughter and Cardasco

Plaintiff alleges that Defendant Slaughter, the Sheriff of Gilchrist County during 2012, assigned Defendant Snodgrass to Plaintiff's investigation instead of a more experienced deputy. (Doc. 15 at 20.)   Plaintiff alleges that Defendant Cardasco refused to conduct any independent investigation or interviews, including interviewing Duran Carmen about the extortion scheme. *Id.*  Plaintiff does not provide factual assertions that support that Defendants Slaughter and Cardasco reached an understanding with the other Defendants to violate Plaintiff's rights, which is required for his claim of conspiracy for malicious prosecution.  *Rowe*, 279 F.3d at 1283-84.  Furthermore, Plaintiff has not demonstrated an absence of probable cause, which defeats his claim for malicious prosecution against Defendants Slaughter and Cardasco.  *Kjellsen*, 517 F.3d at 1237. Therefore, Defendants Slaughter and Cardasco are due to be dismissed from the action.

### (v) Defendant Brock

Plaintiff claims that Defendant Brock went to Plaintiff's property and told Mathew and Melisa Rocks that their children must be interviewed or else they would be placed in foster care.  (Doc. 15 at 22.)  Plaintiff also alleges that Defendant Brock was responsible for two DCF employees entering Plaintiff's residence while he was away and making threats to take the children residing there.  *Id.*  Plaintiff further alleges conclusionally that Defendant Brock conspired with the other Defendants to violate his constitutional rights.

*Id.*

Plaintiff's claim that Defendant Brock conspired with the Defendants to violate his rights is entirely speculative and fails to offer any facts supporting this claim.  Plaintiff states that he believes the threats made by DCF officials were "initiated upon suggestion/s of defendants Snodgrass and other defendants and known to Willis in his alliance with the defendants, above.  In so doing Rene Brock, joined into the conspiracy to have plaintiff falsely charged..."  This allegation, as it applies to Defendant Brock is insufficient to give rise to a claim because a claim for conspiracy must be supported by specific evidence, not just speculation.  *Puglise*, 4 F. Supp.2d at 1181.  Plaintiff's bare and unsupported allegation that he believes that threats by Defendant Brock and other DCF officials were suggested by Defendant Snodgrass fails to allege plausible facts sufficient to support a claim for conspiracy to maliciously prosecute him.

Furthermore, Plaintiff has failed to allege a sufficient basis to support a claim for malicious prosecution. He has not demonstrated that there was an absence of probable cause for his arrest, and therefore his claim for malicious prosecution against Defendant Brock is insufficient.  *Kjellsen*, 517 F.3d at 1237. Accordingly, the claims against Defendant Brock are due to be dismissed.

### (vi) Defendants Mathew and Melisa Rocks

Plaintiff claims that Defendants Mathew and Melisa Rocks conspired to extort money from Plaintiff by (1) coaching MRJ to claim that Plaintiff touched him in a sexual manner; (2) cooperating with the Sheriff to hide their previous conspiracies and falsely prosecute Plaintiff; (3) attempting to have MRJ and JR maintain their fabricated

statements; (4) making false statements to obtain a restraining order; and (5) extorting over $700.00 from Plaintiff.

Plaintiff may not pursue a § 1983 action against Mathew and Melisa Rocks because they are private parties and not state actors.  A claim under § 1983 requires a showing that an individual acting under color of state law deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156-57 (1978).  Only in rare circumstances is a private party considered a state actor for § 1983 purposes: (1) when the state coerces or significantly encourages the action alleged to violate the Constitution; (2) the private parties perform a public function that was traditionally the exclusive prerogative of the State; or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise.  *NBC, Inc. v. Communications Workers of America*, 860 F.2d 1022, 1026-27 (11th Cir. 1988).

Plaintiff does not allege that the state either coerced the Rocks' to extort or that the state was a joint participant.  In his complaint, Plaintiff makes clear Duran Carmen and the Rocks created the extortion scheme, which belies any claim that the Rocks were coerced by the state to extort money from Plaintiff or participate in his prosecution. (Doc. 15 at 3-5.)  To the extent that Plaintiff argues that the Rocks informed on him to the authorities, functioning as an informant is not sufficient to turn an individual into a state actor for purposes of § 1983 liability.  *Lloyd v. Card*, 283 F. App'x 696, 700 (11th Cir. 2008).  Defendants Mathew and Melisa Rocks are not state actors and therefore Plaintiff's claims against them under § 1983 are due to be dismissed from the action.

Case 1:14-cv-00179-MW-GRJ   Document 17   Filed 02/02/15   Page 15 of 19

Page 15 of 19

### (vii) Defendant Schultz

Plaintiff claims that Defendant Schultz failed to inform the court of previous violations of Plaintiff's constitutional rights and continued to detain Plaintiff without probable cause. (Doc. 15 at 24.)  Plaintiff claims that Defendant Schultz's office maintains a policy which has "abolished proper training of his deputies and the observation of state and federal constitutional boundaries." *Id.*

Defendant Schultz lacks any connection to Plaintiff's claim for a conspiracy to maliciously prosecute him.  As Plaintiff states, Defendant Schultz became Sheriff of Gilchrist County on January 1, 2013.  (Doc. 15 at 18.)  Plaintiff was arrested in November of 2012.  (Doc. 15 at 17.)  Defendant Schultz was not involved with the alleged constitutional violations that occurred during Plaintiff's investigation and arrest because he only became Sheriff after Plaintiff already was imprisoned. Without an affirmative link to the alleged constitutional violations, Defendant Schultz cannot be subjected to § 1983 liability.  *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986). Because Defendant Schultz lacks the requisite link to any alleged violations of Plaintiff's rights, this claim fails.

Plaintiff also attempts to allege a separate "failure to train" claim against Defendant Schultz.  The primary problem with this claim is that Defendant Schultz was not the Sheriff during Plaintiff's investigation and arrest.  Any failure to train the deputies investigating Plaintiff would not have been by Defendant Schultz, but by his predecessor.

Putting aside that deficiency in Plaintiff's claim, however, Plaintiff still fails to state

Case No: 1:14-cv-179-MW-GRJ

a claim for "failure to train."  To allege a claim for failure to train, a plaintiff must show that (1) the city inadequately trained or supervised its employees; (2) the failure to train or supervise is a city policy; and (3) the policy caused the employees to violate a citizen's constitutional rights.  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  To show that the failure to train was a government policy, the plaintiff must present some evidence that the government knew of a need to train and/or supervise in a particular area and the governmental entity made a deliberate choice not to take any action.  *Id*.  In his Complaint, Plaintiff has not identified which aspect of the Gilchrist County Sheriff's department's training was deficient, nor has he alleged any facts that the department had notice of a need to train or supervise.  Accordingly, Plaintiff's claim for failure to train is insufficient and, therefore, the claims against Defendant Schultz are due to be dismissed from the action.

### (viii) Defendant Flynn

Plaintiff alleges that Defendant Flynn, a DCF employee, interviewed MRJ and JR and produced an inaccurate report that Plaintiff threatened to harm the children, despite the fact that the interview did not produce any evidence of sexual abuse by Plaintiff.[3] (Doc. 15 at 22.)

Plaintiff's claim that Defendant Flynn conspired to maliciously prosecute Plaintiff is without merit.  Plaintiff has not alleged any facts alleging there was an agreement

---

[3] Plaintiff, however, contradicts his statement that the children never mentioned sexual abuse during the interview: "[I]n the original February 18, 2012 video, JR stated that [P]laintiff had been viewing his laptop and that [P]laintiff had forced him to view two men engaged in sex." (Doc. 15 at 15-16.)

between Defendant Flynn and the other Defendants to violate his rights to support a

claim for conspiracy.  Furthermore, Plaintiff fails to allege that his arrest lacked probable

cause and, therefore, Plaintiff's claim against Defendant Flynn for malicious prosecution

fails.  Finally, although Plaintiff claims that Flynn mischaracterized the children's

interview in her report by opining that "some sort of lewd behavior had occurred," Plaintiff

also alleges that JR reported in his interview that Plaintiff had forced him to watch two

men having sex. (Doc. 15 at 15-16.)  Thus, any claim for malicious prosecution would fail

because Plaintiff alleges facts that could support arguable probable cause.

### (ix) Defendant Sweeley

Plaintiff claims that Defendant Sweeley arrested him by wiretapping a

conversation with his attorney for his location. (Doc. 15 at 24.)  Plaintiff avers that

Defendant Sweeley placed him in handcuffs behind his back for more than three hours,

despite Plaintiff's complaints of extreme discomfort due to his prior shoulder injury and

burn scars. *Id.* Plaintiff alleges that Defendant Sweeley seized and impounded Plaintiff's

car. *Id.*

Plaintiff's claim against Defendant Sweeley  for conspiracy to maliciously

prosecute him is without merit because Plaintiff has not alleged facts suggesting that

Defendant Sweeley lacked probable cause for his arrest; nor has Plaintiff alleged any

facts evidencing an agreement with the other Defendants to violate his rights.

To the extent Plaintiff purports to allege a separate Fourth Amendment claim

against Defendant Sweeley based on the wiretap of Plaintiff's phone conversation, this

claim will also fail.  First, Plaintiff's claim that he "believes [Defendant Sweeley] had

acquired [Plaintiff's] location from an illegal listening device while [P]laintiff was on his phone with attorney" is unsubstantiated speculation. There are no facts alleged to support this claim. Furthermore, Plaintiff's statement that any wiretap was illegal is a legal conclusion unsupported by the facts alleged.  The probable cause necessary to support a wiretap authorization is the same probable cause necessary for a search warrant. *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990).  Plaintiff has not met his burden of alleging facts which plausibly would show that no probable cause existed. In short, Plaintiff's bare allegation, without any supporting facts,  that the wiretap was illegal is conclusory.

Additionally, Plaintiff's claim that his car was seized does not state a claim for a Fourth Amendment violation.  As previously discussed, Plaintiff has failed to allege facts suggesting that his arrest was without probable cause.  Impounding a car pursuant to the owner's valid arrest is within the police's discretion. *Colorado v. Bertine*, 479 U.S. 367 (1987).  Accordingly, Plaintiff has failed to allege facts evidencing that Defendant Sweeley's seizure of his car was in violation of the Constitution and, therefore, this claim is due to be dismissed.

Finally, Plaintiff's claim for excessive force during his arrest is insufficient to allege a claim.  Painful handcuffing, without more, is insufficient to give rise to a claim for excessive force where the resulting injuries are minimal. *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002).  Plaintiff has not alleged any facts suggesting that he sustained any injury from the handcuffing, much less one severe enough to rise to the level of excessive force.  Accordingly, Plaintiff's claim against Defendant Sweeley for

excessive force is due to be dismissed.

## IV. RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the case should

be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**IN CHAMBERS**, at Gainesville, Florida, this 2nd day of February 2015.


*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge



## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**